## UNITED STATES v. BAXTER et al.

*(Circuit Court, D. Washington, N. D. June, 1891.)*

1. TRESPASS—CUTTING TIMBER ON PUBLIC LANDS—EVIDENCE OF VALUE.
   In an action of trespass for cutting timber upon public lands, upon an issue as to the value of the saw-logs at a particular place, it is error to permit witnesses to testify as to the value of saw-logs generally at that time, without having their attention directed to the place in question.

2. SAME—BURDEN OF PROOF—DAMAGES.
   In an action of trespass by the United States for cutting timber on government land the burden of showing that the timber was cut by mistake, with a view of mitigating the damages, is upon the defendants; and, in the absence of evidence to that effect, there is no error in permitting the government to recover the value of the saw-logs when already brought to the water.

3. SAME—PARTNERSHIP.
   Where such a trespass is committed by a firm, one partner cannot show that as to him it was done through mistake, though his partner may not have been mistaken, and ask that one judgment for damages be rendered against him and a different one against his partner, since his holding the fruits of the tort after being notified of the mistake is a ratification of his partner's act.

At Law. On motion for new trial.

*P. H. Winston*, U. S. Atty., for the United States.

*W. R. Andrews*, for defendants.

KNOWLES, J. This action was instituted on the part of the United States to recover damages for a trespass upon certain of its lands bordering on Puget sound. It is alleged in the complaint that defendants entered upon this land, and cut a large number of trees, of the value of $11,000. The defendant Baxter denied the trespass. The defendant Hansen made no appearance in the case, and a default against him was entered. The United States had judgment in the district court of Washington territory where the suit was instituted. The defendant Baxter ap-

pealed from this judgment to the supreme court of said territory. While said appeal was pending in said court, the territory of Washington ceased to exist, and the state of Washington was organized, and admitted into the national Union by virtue of the enabling act, authorizing the people of Washington territory to form a state constitution, and providing for the admission of such state into the Union. The United States circuit court organized for the district of Washington became the successor of the territorial supreme court of this cause. This court must take up this case as it was presented in the record of the supreme court of the territory. It was there for correction of errors in the trial of the cause in the territorial district court. This court being the successor of that court, as the case stood therein, so it must stand here. No new trials were granted by virtue of the transmission from a territorial to a state form of government. When the case was called for trial in the district court, the defendant Baxter asked the court to compel the plaintiff to elect whether it would wage this action for the value of the timber as trees or logs at Quartermaster harbor, and the piles as piles, or whether the action should be waged for the value of the lumber as manufactured lumber. The court does not seem to have ruled upon this motion, but it appears the plaintiff elected to wage its action for the value of the logs as logs at Quartermaster harbor, and the value of the piles as piles. Upon the trial of the cause the witness Enoch J. Mathews, introduced by plaintiff, said: "I do not know the value of the logs at that time." Counsel for plaintiff then asked the witness this question: "What is your best recollection as to the value of the logs at that time?"—which question was objected to by the defendant Baxter, because the testimony was incompetent and immaterial, which objection was overruled, and the ruling excepted to by the defendant. The witness then answered: "To my best recollection, logs were worth five dollars per thousand at that time." It will be seen that the evidence was not directed to the point as to what his recollection was as to the value of the logs at Quartermaster harbor or any other place. There may have been one value for logs at Quartermaster harbor and another value at Seattle or Tacoma. Neither the question nor answer confines the value at any particular place. To allow the witness to testify as to the value of property, he should have some knowledge of the value of the same either from the market price or selling price of the same, or from its adaption to its ordinary and appropriate use. *Railroad Co.* v. *Pearson*, 35 Cal. 247; *Reed* v. *Drais*, 67 Cal. 491, 8 Pac. Rep. 20.

A man's recollection of the value of property is a poor criterion to guide a jury in estimating damages. A man's best recollection is a very indefinite matter. It might amount to so little as to be entirely worthless for any practical purposes, or to influence a business man in arriving at any reasonable conclusion in any business transaction. For these reasons I think it was an error to allow the witness to answer the question asked. It is urged that this evidence was cured by the evidence of the witness F. N. Whitworth. Let us see what his evidence was upon this point. He says saw-logs at that time were worth about $5 per thou-

sand. The time referred to here evidently was in October, 1883. We do not know whether the logs had been disposed of at that time or not. We are not informed by the witness at what place logs were worth $5 per thousand. The evidence should have been confined to Quartermaster harbor, where the plaintiff had elected to prove his damages. I cannot see that this evidence cured in any way the error in the admission of the evidence of the witness Mathews. It cannot be seen from the record whether the jury based their assessment of damages on the evidence of Mathews or Whitworth, or how they could base their assessment of the value of the logs at Quartermaster harbor upon the evidence of either. The general rule is that where there is error in admitting evidence there must be a reversal of the judgment, and a new trial ordered, unless it can be shown from the record that the error could have worked no prejudice to the party against whom it was introduced. Hayne, New Trial & App. § 287.

It is also urged on the part of the appellant that there was error committed in the court below in sustaining the objection to the declarations of Hansen as to the ownership of the camp and property while in possession at or near Quartermaster harbor. It does not appear what was included in the term "camp and property," whether it included the logs cut upon the public lands in that section by Hansen or by Hansen and Baxter. The evidence was offered to prove that Hansen and Baxter were not partners, I suppose. This was a collateral matter. The evidence was not offered for the purpose of limiting or qualifying the possession of Hansen of the camp or property. It does not appear to have been in derogation of any right of Hansen's. They were not made as part of the *res gestæ* of any transaction he was in the act of carrying on. It does not appear why the declarations sought to be introduced in evidence were made. Under these circumstances, I cannot find any error in the exclusion of this evidence, and I do not think its exclusion violated any rule expressed in any of the authorities cited by appellant.

The next point urged is that the United States had no right to recover as damages for the alleged trespass the value of the timber cut as logs at Quartermaster harbor. There is a very plain answer to this by pointing out the obvious fact that it cannot be told from the evidence in the case or the verdict of the jury at what point the value of the logs cut was fixed. It is evident from the evidence that the trespass complained of was committed upon government land. Every man is presumed to have intended to do what he did do. This is a rule in criminal as well as civil actions. When the evidence shows that a man has committed an unlawful act, if it was done on account of a mistake, that is for him to show. If Hansen and Baxter cut the timber set forth in the complaint, it was for them to show it was done by mistake, not the United States to show there was no mistake on their part. When the trespass was shown, the presumption was that it was intentional, willful.

It is claimed that, because the complaint shows that the trespass was willful, the United States should have proved this fact before it could recover for the value of the timber cut as logs at Quartermaster harbor.

It was not necessary to allege that the trespass was willful. The law does not require that the aggravations accompanying a tort should be alleged. 1 Suth. Dam. p. 766. Such matters may be proven with the view to increasing the damages, perhaps, under the rules expressed in the case of *Wooden-Ware Co.* v. *U. S.*, 106 U. S. 434, 1 Sup. Ct. Rep. 398. If the defendant had been able to show that there was a mistake in cutting this timber, the amount of damages would have been materially reduced. But, as stated above, the defendants are in law presumed to have intended to do what the evidence shows they did do. There was no evidence that tended to show that Hansen was mistaken as to where he was cutting the timber set forth in the complaint. Baxter, it is true, claims a mistake as far as he is concerned. It is attempted to separate Hansen and Baxter in this transaction; that is, to hold that, although Hansen may not have been mistaken, yet, if Baxter was, there should be one judgment for damages against Baxter and another against Hansen. I do not think this can be done. It was urged to some extent in the argument that the contract of partnership to cut timber upon the public domain was against public policy and void, and that hence he (Baxter) could not be charged as a partner. If there was any such contract I hold that it did not lay in the mouth of Mr. Baxter to set it up. No man can set forth in his own defense that he has violated the law. *Bank* v. *Case*, 99 U. S. 628. If such a partnership existed, Baxter would have been liable for the tort of Hansen. If the partnership was a lawful one, and Hansen, one of the partners, committed a willful tort, I should think, in such a case as this, the firm would be liable. The firm, if there was one, got the benefit of this willful tort. It received the timber cut. It was sold, and the firm got the benefit of the proceeds of the sale. Although notified that a willful trespass was committed, Mr. Baxter has never repudiated the trespass, and delivered up to the United States the fruits of the same, and turned to Hansen for a redress of his wrongs. He is holding onto the fruits of Hansen's willful trespass, and says, "I ought not to be held responsible for his willfulness." Under such circumstances, Baxter ought to be considered as ratifying the willful tort of Hansen. I do not think there was any necessity of proving a partnership in this case. A common or joint undertaking, which might not have been in fact a partnership agreement, would have been sufficient, if fully established. There is much presented in the argument in this case to show this condition of affairs existed. Baxter seems to have taken a very active part in this business of cutting logs,—too active an interest for one who occupied the position he claims he did, namely, that of mortgagee. The mortgage Baxter held on Hansen's property seems to have been assigned to him for about $87. The mortgage covered about $700 worth of property. Hansen owed Baxter between $300 and $400. I cannot see the necessity, under the circumstances, for Baxter to have resorted to so much trouble in order to get the $300 or $400 Hansen owed him, when it appears he had enough property to satisfy this debt after paying Baxter the amount he paid for the mortgage.

For the reason that the court erred in the admission of the evidence of Mathews as to the damages, the motion for a new trial is granted, and the cause will be set down for a hearing in this court.